[Civ. No. 4044. Second Appellate District, Division Two.—August 2, 1923.]

## JAMES ARP, Appellant, v. ELIZABETH S. BLAKE, Defendant; CHARLES COHN, Respondent.

[1] CHOSE IN ACTION—UNSATISFIED JUDGMENT.—Inherent in an unsatisfied judgment is the right to recover money or other personal property by a judicial proceeding.

[2] ASSIGNMENTS — JUDGMENT — RIGHTS OF ASSIGNEE—SECTION 368, CODE OF CIVIL PROCEDURE.—An assignee of an unsatisfied judgment, under section 368 of the Code of Civil Procedure, providing that "in case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defense existing at the time of or before notice of the assignment," takes the assignment thereof subject to whatever rights the judgment debtor may have against the assignor at the time of the assignment.

[3] CONTRIBUTION — SUBROGATION—PAYMENT AFTER ASSIGNMENT.—A judgment debtor cannot enforce contribution, or assert the right of subrogation, against the assignee of the judgment on account of payment by him, after the assignment, of a different judgment for the payment of the whole of which the assignor is in equity and good conscience chargeable.

[4] ID.—WHEN RIGHT TO CONTRIBUTION ARISES.—The right to contribution is inchoate from the date of the creation of the relation between the parties, but it is not complete so as to be enforceable until there has been an actual payment, in whole or in part, of the common obligation or until something is done equivalent to a discharge thereof.

[5] SUBROGATION—WHEN RIGHT ARISES.—The right of subrogation can arise only in favor of one who has, under some duty or compulsion, paid the debt of another; it arises where one having a

---

2. Effect of assignment of interest in judgment, note, Ann. Cas. 1912B, 525.

liability in the premises pays the debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid.

[6] ID.—PAYMENT.—The doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights, and it is not the liability to pay but an actual payment to the creditor which raises the equitable right.

[7] SET-OFF—DEBTOR AND CREDITOR—ASSIGNMENT—PAYMENT—EQUITY. A debtor is entitled to set-off as against the assignee of the creditor the amount of a judgment obtained against the debtor, the creditor, and another prior to the assignment, which judgment in equity and good conscience should have been wholly paid by the creditor, but which the debtor was required to pay shortly after the assignment because of the insolvency of the creditor and said other; and it is of no moment that the debtor's equitable right to such set-off had not been adjudicated prior to the assignment, where the facts forming the basis of such equitable right were in existence prior to that time.

[8] ID.—WHEN RIGHT EXISTS.—The right of set-off exists when the parties hold cross-demands under such circumstances that in equity they should be applied one against the other and only the balance be recovered.

[9] ID.—EFFECT OF INSOLVENCY.—When the party against whom a set-off is asserted is insolvent the rights of the party claiming the set-off are of especial equitable cognizance.

[10] ID.—ACTION TO ESTABLISH—ESTOPPEL—REPRESENTATIONS—FINDING.—In an action for a set-off against the assignee of a judgment against the plaintiff, an estoppel from asserting a right of set-off is not created by representations made by plaintiff to the assignee prior to the purchase of said judgment that if the latter would purchase the same, plaintiff would shortly thereafter pay the amount thereof, in the absence of a finding that said assignee relied upon such representations and that he purchased the judgment in reliance thereon, and that he would not have purchased the judgment but for such representations.

[11] ID.—ESTOPPEL—PLEADING—FINDINGS.—All essential elements of estoppel must be alleged and must be found upon, and from such facts estoppel must be clearly deducible.

[12] SUBROGATION—ASSIGNMENT—PAYMENT.—A debtor is not entitled to assert the right of subrogation as against the assignee of the creditor by reason of the payment by the debtor, after the assignment, of an outstanding judgment against the creditor alone.

7. Set-off against judgment in the hands of assignee, notes, 23 L. R. A. 335; L. R. A. 1917F, 1010.

[13] ID. — ASSIGNMENT — CONSIDERATION — PLEADING — ABSENCE OF
PREJUDICE.—A count in a complaint by a debtor seeking subroga-
tion by reason of the payment by him, after the assignment of a
judgment against said debtor, of an outstanding judgment against
the creditor, and charging that said assignment was made with-
out consideration and only for the purpose of security, states a
cause of action; and error in sustaining a demurrer thereto was
without prejudice where in finding upon the same allegations in
another count it was declared that the assignment in question
was made for a valuable consideration.

[14] ATTACHMENT—CLAIMS FOR DAMAGES IN TORT.—Claims for dam-
ages in tort, being unliquidated, are not such debts or credits
as are contemplated by the attachment laws to be subject to gar-
nishment process; but after the claim has been reduced to a fixed
sum by a final judgment, it is then subject to such process, and
until then the claim maintains its character as an unliquidated
claim.

[15] ID.—ACTION IN TORT—JUDGMENT—EFFECT OF APPEAL UPON.—
The effect of an appeal in an action for damages for tort is to
deprive the judgment of its finality, and it operates to keep
alive the case as one of tort as it existed before the judgment
was rendered.

APPEAL from a judgment of the Superior Court of
Kern County. T. N. Harvey, Judge. Reversed.

The facts are stated in the opinion of the court.

Alfred Siemon, W. W. Kaye and L. E. Nathan for Ap-
pellant.

Edward Brittan for Respondent.

SHENK, J., *pro tem.*—This is an action in equity to en-
force contribution and subrogation and for a set-off of al-
leged mutual debts. The complaint is in three counts. As
to the first cause of action the court rendered judgment in
favor of the plaintiff against the defendant Blake and in
favor of respondent Cohn. Demurrers to the second and
third causes of action were sustained without leave to amend.
The plaintiff has appealed only from that portion of the
judgment ordering that plaintiff take nothing as against the

14. Liability to garnishment of unliquidated claims, note, 59
L. R. A. 353.

defendant Cohn and awarding to the latter his costs of suit, and is taken on the judgment-roll as to the first count and on a bill of exceptions as to the second and third counts. The defendant Blake has not appealed and the judgment as to her has become final.

The sufficiency of the findings and admitted facts to support the judgment in favor of the respondent on the first cause of action will first be considered. In response to appropriate allegations and proof it is found that on the twenty-fourth day of December, 1914, the defendant Blake commenced an action in the superior court of Kern County against the plaintiff to recover damages for the alleged breach of an agreement to sell real estate; that a judgment in her favor and against the plaintiff, in the sum of $2,100, interest and costs, was entered on October 25, 1915, and after appeal became final on April 5, 1919 (*Blake* v. *Arp,* 180 Cal. 144 [179 Pac. 683]); that on June 3, 1919, that judgment was sold and assigned to the respondent Cohn for a valuable consideration and not for the purpose of security.

It is further found that on March 17, 1916, Jay Ransch brought an action, also in the superior court of Kern County, against the defendant Blake, plaintiff Arp, and one Hewitt to recover the value of the use and occupation of real property; that a judgment in that case was rendered in favor of the plaintiff against all three of the defendants for the sum of $1,050, interest and costs; that said judgment was entered on April 11, 1916, and became final after appeal by Arp on June 1, 1919 (*Ransch* v. *Arp,* 39 Cal. App. 580 [179 Pac. 694]); that execution was issued and under compulsion of a threatened levy Arp, on July 1, 1919, paid that judgment in full, amounting to $1,330.30; that the use and occupancy of said real property was solely and exclusively that of defendant Blake and that as between Arp and Blake in equity and good conscience Blake was chargeable with the payment of the whole of that judgment. Judgment was accordingly rendered against her in the present action for contribution.

It is contended by the appellant that on the findings and the admitted facts judgment should have been rendered against the defendant Cohn for the full amount of the Ransch judgment. The first question presented is: Did the

defendant Cohn take the assignment subject to any right of set-off, contribution, or subrogation in favor of the plaintiff at the time of the assignment? It is the general rule, as contended by appellant, that the assignee of a judgment acquires no better right than the assignor had at the time of the assignment. Section 368 of the Code of Civil Procedure reflects the principle involved in the general rule. That section provides as follows: "In case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defense existing at the time of or before notice of the assignment." A thing in action is a right to recover money or other personal property by a judicial proceeding. (Sec. 953, Civ. Code.) [1] Inherent in an unsatisfied judgment is this right. (*Haskins* v. *Jordan*, 123 Cal. 157 [55 Pac. 786].) At the time of the assignment, to wit, June 3, 1919, the Blake judgment was final and unsatisfied. [2] The effect of section 368, as applied to the present case, is that Cohn took the assignment of the judgment subject to whatever rights the appellant had against Blake at the time of the assignment.

It is contended by respondent that as the appellant had not paid the Ransch judgment prior to the assignment a right of set-off, contribution, or subrogation had not accrued against Blake. prior to the assignment. [3] As to the alleged rights of contribution and subrogation the respondent's position is well supported. Section 1432 of the Civil Code provides: "A party to a joint, or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportional contribution from all of the parties joined with him." The right given by this section of the code to a joint obligor is based upon the principle of equity that when he has paid money which in equity and good conscience should be paid by another he should be reimbursed therefor. (*Backer* v. *Grummett*, 39 Cal. App. 101 [178 Pac. 312].) "A party acquires a right of contribution as soon as he pays more than his share but not until then." (*Richter* v. *Henningsan*, 110 Cal. 530 [42 Pac. 1077; *Enscoe* v. *Fletcher*, 1 Cal. App. 659 [82 Pac. 1075]; *Bell* v. *Walsh*, 7 Cal. 84.) In the early case of *Sherwood* v. *Dunbar*, 6 Cal. 53, it was held that in an action for contribution between joint obligors the statute of limitations does not begin to run until the payment of the debt by the party

seeking to enforce contribution. [4] The right to contribution is inchoate from the date of the creation of the relation between the parties, but it is not complete so as to be enforceable until there has been an actual payment, in whole or in part, of the common obligation or until something is done, equivalent to a discharge thereof. (13 Corpus Juris, 821, 823, and cases cited.) See, also, *Los Angeles Nat. Bank* v. *Vance*, 9 Cal. App. 57 [98 Pac. 58].

[5] The right of subrogation can arise only in favor of one who has, under some duty or compulsion, paid the debt of another. It arises where one having a liability in the premises pays the debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. [6] The doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights and it is not the liability to pay but an actual payment to the creditor which raises the equitable right. (*Aetna Life Ins. Co.* v. *Middleport*, 124 U. S. 534 [31 L. Ed. 537, 8 Sup. Ct. Rep. 625, see, also, Rose's U. S. Notes] ; 25 R. C. L. 1312, 1315.) See, also, *Matzen* v. *Shaeffer*, 65 Cal. 81 [3 Pac. 92] ; *Darrough* v. *Herbert Kraft Co. Bank*, 125 Cal. 272 [57 Pac. 983].

The right of contribution or subrogation, therefore, did not accrue in favor of the appellant until his payment of the Ransch judgment on July 1st.

[7] But we think the contention of the appellant that prior to and at the time of the assignment he had the right to an equitable set-off against Blake and that such right attached itself to the assignment in the hands of Cohn must be sustained. [8] The right of set-off exists when the parties hold cross-demands under such circumstances that in equity they should be applied one against the other and only the balance be recovered. (*Russell* v. *Conway*, 11 Cal. 93; *Machado* v. *Borges*, 170 Cal. 502 [150 Pac. 351].) "A purchaser and assignee of a judgment, even for a valuable consideration and without notice, takes subject to a right of set-off existing at the time of the assignment, for an assignee takes subject to all equitable as well as legal defenses which can be urged against the assignor." (*Porter* v. *Liscom*, 22 Cal. 430 [83 Am. Dec. 76] ; *Haskins* v. *Jordan, supra*.) The appellant's liability to pay the Ransch judgment became

fixed on June 1st by final judgment. Execution could have issued immediately and appellant could have urged no defense to the enforcement thereof. The defendants Blake and Hewitt were admittedly insolvent. [9] When the party against whom a set-off is asserted is insolvent the rights of the party claiming the set-off are of especial equitable cognizance. (*Coonan* v. *Loewenthal*, 147 Cal. 218 [109 Am. St. Rep. 128, 81 Pac. 527] ; *Hobbs* v. *Duff*, 23 Cal. 626.) Because of such insolvency it was certain that the appellant would be required to pay the obligation of Blake which, according to the finding of the court, was solely her obligation. If Blake had sought to enforce her judgment against Arp prior to the assignment Arp unquestionably could have set off the amount of the Ransch judgment, the payment of which for Blake's benefit he, as the only solvent judgment debtor, could not escape. It is of no moment that Arp's equitable right had not been adjudicated prior to the assignment, if the facts forming the basis of such equitable right were in existence prior to that time. Those facts were so in existence and Cohn took the judgment subject to that right.

It is contended by respondent that the appellant is estopped from asserting any right as against him by reason of the allegations of his affirmative defense and the finding of the court thereon. The respondent alleges that about the time of the purchase by him of the Ransch judgment, and prior thereto, the plaintiff "represented and held out to the said defendant, Chas. Cohn, that he, the said James Arp, was about to pay off the said judgment owing to the said Elizabeth Blake, and that if he, the said defendant, Chas. Cohn, would purchase said judgment, that the said James Arp would shortly thereafter pay the said Chas. Cohn, the amount of said judgment and defendant, Chas. Cohn, believing him and relying upon said James Arp, did purchase said judgment and obtain an assignment thereof, and pay the sum of $2550.00 to the said defendant, Elizabeth Blake, therefor. That he would not have purchased the same if the said James Arp had not made said representation to him, and that therefore the said plaintiff, James Arp, is and should be estopped of claiming of contribution or right to subrogation or contribution against this defendant, Chas. Cohn." In response to the issue joined on these alle-

gations the court found that before Cohn purchased the judgment from Blake the plaintiff "did agree to pay said judgment to the said Charles Cohn if the said Charles Cohn would purchase the said judgment from the said Elizabeth S. Blake, and that the said Charles Cohn purchased the said judgment after said representation and statement had been made to him by said James Arp, and that the said statements and representations of the said James Arp were not made for the purpose of deceiving the said Charles Cohn but were made by the said James Arp at a time when he had not been compelled to pay and had not paid the judgment in favor of said Ransch and against the said Arp, Hewitt and Blake."

[10] The sufficiency of the allegations charging estoppel is not questioned, but it is contended that the court did not find on all of the essential elements of the alleged estoppel. Particularly that it is not found that the respondent relied upon the statements attributed to the appellant and purchased the judgment in reliance upon such statements, and that it is not found that he would not have purchased the judgment but for such statements. We think the findings are deficient in the particulars indicated. For aught that appears the respondent may have purchased the assignment, notwithstanding the alleged representations. [11] All essential elements of estoppel must be alleged (*Davis* v. *Davis,* 26 Cal. 39 [85 Am. Dec. 157]); and must be found upon (*Fritz* v. *Mills,* 12 Cal. App. 113 [106 Pac. 725]); and from such facts estoppel must be clearly deducible therefrom. (*Wheaton* v. *North British etc. Ins. Co.,* 76 Cal. 429 [9 Am. St. Rep. 216, 18 Pac. 758].)

The refusal of the court to allow the plaintiff to amend the second and third causes of action is assigned as error. In the second cause of action it is alleged that an action for damages was commenced by Hochheimer & Co. against the defendant Blake on July 8, 1915, in which action a judgment was entered on the following day against Blake for $458.39 and costs. It is further alleged that on November 3, 1915, an execution was levied on all "debts, choses in action and demands of every kind" in the hand of the plaintiff Arp; that on October 29, 1920, a second execution was issued and served on Arp, and that on the third day of November, 1920, in response to such levy Arp paid the

Hochheimer judgment and took an assignment thereof from the judgment creditor. On information and belief it is alleged that Charles Cohn claims to own the judgment in the case of *Blake* v. *Arp* by an assignment dated June 3, 1919; that Charles Cohn paid no consideration for said assignment and that the assignment made to him by Blake was made for the purpose of security and not otherwise, and plaintiff prays that he be subrogated to the rights and to the place of Hochheimer Company in and to the judgment in that action.

At the time that plaintiff responded to the levy of execution in the Hochheimer case, to wit, November 3, 1920, the judgment in the original case of *Blake* v. *Arp* had become final and was unsatisfied. Upon the payment of such judgment Arp had the right of subrogation as against Blake. But that question is not now open to review, for the reason that plaintiff has.taken no appeal from his judgment as against Blake. The notice of appeal recites: "This appeal is taken from that portion of the judgment ordering that the plaintiff take nothing against the defendant Charles Cohn and that said Charles Cohn recover his costs against the plaintiff, but is not from that portion of said judgment ordering and adjudging that plaintiff recover of and from the defendant Blake the sum of $1,050 with interest, etc." If plaintiff were dissatisfied with the amount of his judgment against Blake in this action he should have appealed from that portion of the judgment also. The only question which concerns us on this branch of the case is whether or not the second count states a cause of action against Cohn. In order to decide that question it must first be determined whether the second count states facts which would charge Blake with subrogation on June 3, 1919, and impose upon Cohn that burden under his assignment. [12] It must be concluded, upon the authorities above cited, that the second count does not state such facts. The plaintiff did not pay the Hochheimer judgment until November 3, 1920, and the right now asserted did not accrue until that date.

For the purposes of the demurrer, however, it must be assumed that the allegations that Cohn paid no consideration for the assignment and took it only for the purposes of security are true. [13] With such an assumption the plaintiff would have the right to consider Blake as the owner

of the judgment against him, subject only to its assignment for security and the allegations referred to were good as against the demurrer. It was error to sustain the demurrer in the face of those allegations. But if the second count does not state a cause of action except for those allegations, how can it now be said that the order sustaining the demurrer was prejudicial to the plaintiff's rights, in view of the fact that the court tried the issues tendered by the same allegations in the first cause of action and found that Cohn bought the judgment outright for $2,550? It cannot be assumed that the court having found in favor of the respondent on those issues in the first cause of action would find against him on the same issues in the second cause of action.

In the third cause of action it is alleged that on November 10, 1916, an action was commenced by the Colonial Hospital Company against the defendant Blake in the justice's court of the sixth township of Kern County to recover the sum of $34, interest and costs. It is further alleged that a writ of attachment was issued in that case and was levied on all debts, credits, and other personal property in the possession of the plaintiff Arp and belonging to the defendant Blake, with the instruction that Arp do not pay over the same to anyone except the constable. All of the facts with reference to the action of *Blake* v. *Arp* are also alleged, and plaintiff prays that he be allowed to pay a sufficient sum into court to satisfy any judgment that may be rendered in favor of the Colonial Hospital Company.

There was no prejudicial error in the order sustaining the demurrer. In the first paragraph of the first cause of action it is alleged that "on December 24, 1914, the defendant Elizabeth S. Blake, commenced an action in the above entitled court against this plaintiff for the recovery of damages for the alleged breach of an agreement to sell real property, etc." This allegation is by reference incorporated in the second and third causes of action. In the plaintiff's application to amend his counsel stated as follows: "I ask leave to amend the second and third causes of action, and the purpose of amending it is this: I notice in the first paragraph of the complaint I allege that Elizabeth Blake commenced an action in the above-entitled court against the plaintiff for the recovery of alleged damages for the breach of an

agreement to sell real property. That paragraph is made a part of the second and third causes of action. I want to amend that by saying that she commenced an action for the rescission of an agreement to sell real property." After some discussion the court inquired of counsel: "You are only asking to amend the second and third causes of action?" to which counsel replied: "That is right." The evident purpose of appellant's counsel was to amend the second and third causes of action so that the same might show upon the face thereof that the action of *Blake* v. *Arp* was an action in rescission and not an action for damages and thereby escape the rule which was successfully urged against him on demurrer that the claim of Blake against Arp was unliquidated prior to judgment and therefore not subject to garnishment. The position taken by appellant places him in a position of insisting upon an amendment to the second and third causes of action at variance with allegations on the same subject in the first cause of action. Appellant does not attempt to justify this inconsistent position. Furthermore, if the application had been made to apply to all three causes of action we have the record of the Blake case before us which shows that the case was prosecuted on the theory that it was an action for damages, and we also have the opinion of the supreme court classifying the action as follows: "The complaint is framed upon the theory of an action to recover damages for the fraudulent representation of the defendant that he had title. It is not an action to rescind, but for breach of contract to convey real property." (*Blake* v. *Arp*, 180 Cal. 146 [179 Pac. 684].) This declaration of the supreme court was made under date of March 10, 1919, and must have been known to appellant's counsel at the time of the preparation of the complaint in this action, about November 4, 1920. No good reason has been suggested why the plaintiff should not be bound by the final determination of the case to which he was a party.

[14] It is well settled that claims for damages in tort, being unliquidated, are not such debts or credits as are contemplated by the attachment laws to be subject to garnishment process. But after the claim has been reduced to a fixed sum by a final judgment, it is then subject to such process. Until then the claim maintains its character as an unliquidated claim. (2 Shinn on Attachment and Garnish-

ment, secs. 482, 483; *Waples-Platter Grocer Co.* v. *Texas & P. Ry. Co.,* 95 Tex. 486 [59 L. R. A. 353, 68 S. W. 265], and cases cited in the note.)   See, also, *Hassie* v. *G. I. W. U. Congregation,* 35 Cal. 378; *Redondo Beach Co.* v. *Brewer,* 101 Cal. 322 [35 Pac. 896].

[15]   The garnishment mentioned in the third cause of action as having been served on Arp in 1916 was served pending the appeal in the case of *Blake* v. *Arp.*   In the case of *Waples-Platter Grocer Co.* v. *Texas & P. Ry. Co., supra,* the complaint sounded in unliquidated damages.   Garnishment was served pending appeal and we think the court correctly stated the rule under such circumstances as follows: "The effect of the appeal was to deprive the judgment of its finality, and it operated to keep alive the case as one of tort as it existed before the judgment was rendered."

The judgment is reversed as to the first count and a new trial is granted on the issues involved in the plea of estoppel raised by the answer of respondent to that cause of action.

Finlayson, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 31, 1923.