[Civ. No. 3086.   Third Appellate District.—July 16, 1926.]

## JAMES ARP, Respondent, v. ELIZABETH S. BLAKE et al., Appellants.

[1] CONTRIBUTION — JUDGMENTS — SET-OFF — ASSIGNMENTS — ESTOP-PEL—EVIDENCE—FINDINGS.—In this action to enforce contribution founded upon payment of a judgment, which judgment was assigned, the defense of estoppel interposed by the assignee that plaintiff failed to disclose to him when purchasing the judgment that plaintiff intended to set up his right to contribution as against the judgment against him for any excess he might be compelled to pay over and above his share of the obligation was not supported by the evidence; but even if the insufficiency of the evidence to sustain such estoppel were to be disregarded, still the finding of the trial court that the plea of estoppel was not sustained cannot be disturbed on appeal, where the evidence on such question was conflicting.

[2] ID.—EXISTENCE OF LIENS—CLAIMS—NOTICE.—A judgment debtor is under no legal obligation to disclose to one purchasing the judgment that there are certain claims and liens existing against or on such judgment.

[3] ESTOPPEL—ACTS INDUCED BY SILENCE OF PARTY WHOSE DUTY IT IS TO SPEAK—EVIDENCE.—Mere silence on the part of a party will not create an estoppel unless he was under some obligation to speak, and a party invoking such estoppel must show that it was the duty of the other to speak, and that he not only has been induced to act by reason of such silence, but that the other had reasonable cause to believe that he would so act.

(1) 4 **C. J.**, p. 883, n. 33; 21 **C. J.**, p. 1252, n. 93.   (2) 34 **C. J.**, p. 647, n. 43.   (3) 21 **C. J.**, p. 1150, n. 89, 90, p. 1151, n. 92.

APPEAL from a judgment of the Superior Court of Kern County.   Howard A. Peairs, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Brittan & Brittan for Appellants.

Alfred Siemon, Paul F. Garber and Siemon & Garber for Respondent.

3.  See 10 Cal. Jur. 631; 10 R. C. L. 692.

HART, J.—The plaintiff brought this suit in equity to enf. rce his right to contribution founded upon his payment of a certain judgment obtained by one Ransch against the plaintiff, the defendant Blake and one Hewitt, in the sum of $1,050 and interest. The plaintiff was awarded judgment, from which this appeal is prosecuted by the defendants under the so-called alternative method. (Code Civ. Proc., sec. 953a.)

The present is the final outgrowth of several other actions previously tried and determined, a recital of the history of which is deemed necessary to a clear understanding of the issue submitted for decision by this appeal. The respondent's brief contains the following well-stated and correct account of the several actions of which the present is the culmination, and we will, therefore, adopt into this opinion the history of the litigation as it is so recited:

"On May 27, 1910, plaintiff James Arp made a contract with defendant Blake to sell her certain residential property. At the time of making said contract Arp held the property under another contract of purchase, presumably with the owner, J. Ransch, which contract had been executed by an attorney-in-fact; but it later developed that the owner had revoked the power of attorney, and Arp was unable to get title to deliver to Blake. Blake then brought suit against Arp and recovered judgment for breach of the contract to sell, and that case was finally decided against Arp by this (Supreme) court, the decision being reported in *Blake* v. *Arp*, *180 Cal. 144* [179 Pac. 683]. The details of that litigation are set forth in paragraph 1 of the complaint in this case. The judgment in that case will be referred to herein as the 'Blake-Arp judgment.'

"Shortly after the commencement of the suit of *Blake* vs. *Arp*, the owner, J. Ransch, commenced a suit against Blake, Arp and one Hewitt for the purpose of recovering the value of the use and occupation of said property for the time Blake occupied the same under the Arp contract. (The date of the commencement of this action is given in the Clerk's Transcript as March 17, 1919; but this is obviously a mistake, as it appears elsewhere in the said transcript that judgment in said case was secured April 11,

1916.) This case also found its way into the books, the appeal thereon being reported as *Ransch* v. *Arp,* 39 Cal. App. 580 [179 Pac. 694]. That judgment was against Arp, Blake and Hewitt for the use and occupation of the property, and the case is particularly described in paragraph II of the complaint herein. That judgment will be referred to in this brief as the Ransch-Blake judgment.

"The above mentioned litigation having thus resulted, Arp contended that the last mentioned judgment was the personal and individual obligation of Blake by reason of her having secured the benefits of the said use and occupation, and that she ought to pay it, or, in case he should be compelled to pay it, that he should be allowed a set-off on the Blake-Arp judgment which Blake held against him. He accordingly moved for a credit in the case of *Blake* vs. *Arp,* and the lower court allowed a set-off of one-third of the Ransch-Blake judgment; but both parties appealed and the case was reversed on the ground that contribution could not be enforced by motion. (*Blake* v. *Arp,* 48 Cal. App. 715 [192 Pac. 452].)

"Arp then commenced the present action for contribution or a set-off against the Blake-Arp judgment, having theretofore been compelled to pay the Ransch-Blake judgment. Defendant Cohn had received an assignment of the Blake-Arp judgment and was accordingly made a party defendant. The first cause of action set forth in our complaint relates to the matters above mentioned and asks for credit on the Blake-Arp judgment of the amount which plaintiff had been compelled to pay on the Ransch-Blake judgment. The complaint also contained two other causes of action growing out of garnishments on Arp by creditors of Blake, but these causes fell by the wayside on demurrer in the trial court.

"A trial was had on the first cause of action which resulted in a judgment in favor of Arp against Blake but not against Cohn. Plaintiff appealed to this (the Supreme) Court and the case was transferred to the District Court of Appeal for the Second District for hearing, where it was decided August 2, 1923, by Judge Shenk. (*Arp* v. *Blake,* 63 Cal. App. 362 [218 Pac. 773].) By this opinion the decision of the trial court was reversed, and it was

held that Arp's right to a set-off was valid and enforceable against Cohn as the assignee of Blake unless there had been an estoppel in favor of Cohn, and ordered the case back for trial on the issue of estoppel alone. The case was retried on that question and judgment went in favor of plaintiff and against defendant Cohn for the full amount of the Ransch-Blake judgment and interest, the defendant Cohn, as assignee of Blake, having enforced payment by Arp of the full amount of the Blake-Arp judgment during the pendency of the former appeal herein.''

The facts set forth in the complaint, as is to be inferred from the foregoing statement, are substantially as they are given in said statement. The answer of Cohn, besides admitting and denying certain of the allegations of the complaint, sets up a special defense by way of an estoppel founded upon the following alleged facts: That immediately prior to the purchase of the Blake-Arp et al. judgment by said Cohn and the assignment thereof to him, said Cohn met and conversed with the plaintiff herein regarding said judgment; that the plaintiff stated and represented to Cohn that he (plaintiff) ''was about to pay off the said judgment owing to the said Elizabeth Blake, and that if he, the said defendant Charles Cohn, would purchase said judgment the said James Arp would shortly thereafter pay the said Charles Cohn the amount of said judgment, and defendant Charles Cohn, believing him and relying upon said representation of the said James Arp, did purchase said judgment and obtain an assignment thereof, and pay the sum of $2,550.00 to the said defendant, Elizabeth Blake, therefor, that he would not have purchased the same if the said James Arp had not made said representation to him, and that, therefore, the said plaintiff, James Arp, is and should be estopped from claiming contribution or right to subrogation or contribution against this defendant, Charles Cohn.''

As before stated, the special defense thus set up involved or tendered the only issue litigated below in the present trial. The trial court found against the defendant Cohn upon his plea of estoppel.

It appears from the evidence that, prior to the date of the purchase by Cohn and the assignment to him of the

Blake-Arp judgment, to wit, June 3, 1919, said judgment
being for the sum of $2,100, the judgment-creditor Blake
was indebted to Cohn for and on account of money ad-
vanced by the latter to the former, in a sum exceeding
$3,000; that Mrs. Blake, after obtaining the judgment
against Arp, was frequently importuned by her attorneys
in the action in which she secured said judgment for the
payment of their fee of $708 for the professional services
they rendered therein for said Blake; that she (Blake)
applied to Cohn for sufficient money with which to pay
said fee; that Cohn, upon the understanding that Mrs.
Blake would assign said judgment to him in consideration
of and for the payment of said attorneys' fee, agreed to
satisfy or pay the same, and did do so, and received from
Blake such assignment; that it was further agreed by
Cohn that upon the satisfaction of said judgment by the
payment thereof by Arp, Cohn should and would credit
upon the then existing indebtedness of Blake to him, the
difference between the amount paid in satisfaction of the
said fee of the attorneys and the sum remaining of the
satisfied judgment debt. Arp having paid the judgment
to Cohn, the latter followed the course with respect to the
disposition of the money so received as indicated by his
said agreement. These facts are undisputed—in fact, they
were admitted by Cohn when testifying herein in his own
behalf and were specifically found to be true by the trial
court. But, as seen, Cohn claims that he did not purchase
said judgment until after he had talked with Arp with
reference thereto and then solely upon the representation
or assurance by Arp that, if Cohn should and did buy the
judgment, he (Arp) would pay and so satisfy it. This
brings us to the consideration of the question whether the
finding that Cohn's plea of estoppel rests upon a sufficient
evidentiary foundation. Upon this question the court
found that, prior to the purchase of said judgment by
Charles Cohn, the latter and Arp had a conversation in
which the proposition of Cohn to purchase said judgment
was discussed; that said Arp (plaintiff) "then and there
stated to the said Cohn that he, said plaintiff, held certain
offsets against said judgment and that, if he should be
compelled to pay said judgment in said action 8450 to the

said Ransch, he, the said plaintiff, would deduct the same from the amount of the judgment in favor of said Blake, and that, if the defendant Cohn purchased said judgment, the plaintiff would pay defendant Cohn whatever remained due; that it is not true that the said Charles Cohn purchased the said judgment from the said Blake upon any belief in or reliance upon any promise of the plaintiff to pay the whole of said judgment to the said Charles Cohn; that it is not true that the said Charles Cohn would not have purchased the said judgment except for his belief in or reliance upon any representation or statement of the plaintiff that plaintiff would pay the whole of said judgment.'' The court further found, as above stated, that the sum of $708 paid by Cohn to the attorneys acting for and representing Mrs. Blake in her action against the plaintiff here ''is the only sum and the only amount of money which the defendant Cohn in any manner paid out or expended for or on account of said assignment'' (of said judgment), and further found ''that the defendant Cohn did not pay out or expend such sum or any part thereof, or suffer any loss or prejudice whatever by reason of any statement, act or declaration whatever of the plaintiff, James Arp; that, on or about June 3d, 1919, immediately prior to the time when the said defendant Cohn paid out said sum of money and received the said assignment of said judgment the plaintiff, James Arp, notified and informed the defendant, Charles Cohn, that he, the said Arp, would expect credit on said judgment held by said Blake in the event he was ultimately compelled to pay said judgment in said case No. 8450.'' It was also found, in response to the allegations of the supplemental complaint filed herein by the plaintiff here, that the plaintiff Arp was compelled to and did pay the amount of the judgment ($3,975) in the Ransch-Blake action upon a duly issued writ of execution, which was placed in the hands of the sheriff, with instructions to satisfy the same out of the property of the plaintiff; that plaintiff, to prevent his property from being seized and sold under and by virtue of said writ, paid the amount of said judgment to the sheriff.

[1] The single question presented to us here is whether the above findings, in so far as they relate to the plea of

estoppel set up by the defendant Cohn, derive sufficient support from the evidence.

The defendant Cohn testified that he called at the office of the attorneys of Mrs. Blake in her litigation with the plaintiff to discuss the matter of paying the fee due them from Mrs. Blake for services performed by them for her in said litigation, and of taking over by purchase the judgment then existing in favor of Mrs. Blake against the plaintiff; that he (Cohn) did not care to consummate the deal until he had talked the matter over with plaintiff; that he left the office of the lawyers and within a brief time thereafter met Arp on the street; that he said to Arp that Judge Scott (one of Mrs. Blake's attorneys) ''wanted him (Cohn) to buy the judgment that Mrs. Blake has got against you; I told him (Scott) I wouldn't buy anything subject to litigation. . . '. 'Now,' I says (addressing Arp), 'that's the situation; you (Arp) are strong on law suits and I don't want law suits.' He (Arp) says: 'Yes, you have got a judgment and go ahead and buy it; I would rather you would have it than anybody else because I know in case I am short of money you are not going to crowd me.' I says, 'That's all right; I will give you all reasonable time, but I want interest on the principal.' '' Cohn, proceeding, testified that he thereupon told Arp that he (Cohn) would go to Judge Scott's office and give the judge a check for $708, the amount of the attorneys' fee. Cohn further testified that the conversation just related was the only one he had with Arp regarding the purchase of said judgment prior to said purchase and that no other persons but Arp and himself were present when it took place. He also testified that, prior to making such purchase, he had no knowledge of the fact or did not know that Arp had a judgment against Mrs. Blake.

As Cohn testified, no other persons than he and Arp were present when the said conversation took place. Therefore, Arp's was the only testimony other than that of Cohn disclosing the nature or purport of the conversation given at the trial. Arp's testimony materially varied from that of Cohn relative to what was said by them in the conversation. But, before stating the testimony of Arp, or the substance thereof, it should be explained that, after the judgment

obtained by Mrs. Blake against Arp became final, two creditors of the former, before the said conversation was had, brought actions against her to recover debts owing to them from her, and each had caused to be served upon Arp a writ of attachment and thereby garnished the money due from Arp to Mrs. Blake upon said judgment. This garnishment existed at the time the conversation took place between Cohn and Arp relative to the purchase by the former of the Blake-Arp judgment and, of course, Arp was bound thereby (Code Civ. Proc., sec. 544). Now, as to the nature of the conversation referred to, Arp testified, as Cohn testified, that there was but one conversation between them relative to the Blake-Arp judgment, and, as Cohn also testified, said conversation occurred on the street, where the two happened to meet; that Cohn said to him that he (Cohn) had bought the Blake-Arp judgment from Mrs. Blake, and that he (Arp) replied: ''Well enough, that's all right; I will pay it, but there are several garnishments and I also have a claim against her (Mrs. Blake) for rent. Q. Did you tell him that time that you had no claims of any kind? A. No, sir, I did not; I told him I had a bill of the horse pasture and a garnishment by Mr. Allen and one of the Hochheimer Company, and also the J. Ransch judgment that she owed to Ransch which I was trying to make her pay. Q. What did he say, if anything? A. Well, he said he didn't have anything to do with that at all; I says, 'I have; they have already garnished me before this': and so he says, 'I have paid Mr. Scott for the assignment': he says, 'Yes. Mr. Scott called me up and told me about it; that you were going to pay it off or something like that.' '' On cross-examination Arp testified: ''Q. Now, at that time when you had that conversation, what was said between you as to the payment of this Ransch judgment? A. Well, we talked it over there and I told Mr. Cohn about these garnishments against me and also the Ransch judgment against Mrs. Blake and I and Hewitt, and I hadn't occupied the house or received anything about it and . . . had to protect myself; he said he had bought it and I would as soon pay him as anybody else—it didn't make any difference to me; if I had to pay it, I would pay it. . . . Q. Didn't you tell him you were

glad he had bought the judgment and knew he wouldn't
press you and you would be glad to pay him interest on
it? A. Not the whole judgment. Q. Well did you distin-
guish between any particular amounts that you were will-
ing to pay interest on? A. Well, just what was the bal-
ance—about twenty-four or twenty-five hundred dollars.
Q. Well, did you say balance? A. Yes. Q. Did you ever
tell him what this money was that she owed you? A. Yes,
I told him several times. Q. You told Charley Cohn what
it was? A. Yes. Q. Did you tell him in this conversa-
tion what it was? A. I told him something like thirteen
hundred dollars. . . . He said he didn't know anything
about that; that wasn't his business.''

It is clear that the testimony, of which a brief *résumé*
is given above, fully upholds the finding that Cohn's spe-
cial plea by way of estoppel is wanting in sufficient evi-
dentiary support. First it may be observed that Arp
knew (as did Cohn) that the former would in any event
be bound by the judgment against him—that is to say, he
(Arp) knew that he would be so bound, regardless of
whether the ownership thereof remained in the judgment-
creditor or was in any third party to whom she might as-
sign it, and he (Arp) further knew that he was entitled to
claim any set-off he might have against the judgment-credi-
tor against her assignee of said judgment. (Civ. Code,
sec. 1432.) Hence, it would seem, he could have had no
possible reason for concealing from Cohn the fact that he
claimed and intended to set up his right to contribution
as against the judgment against him for any excess he
might be compelled to pay, in satisfying the Ransch-
Blake et al. judgment, over and above his share of the ob-
ligation. But, be that as it may, according to Cohn, it
was Arp's silence as to his claimed right of contribution
which constituted the main ground of his ''offending''
and this was only an act of omission in that he failed to
disclose to Cohn that he claimed such right and intended
to assert it at the proper time as in recoupment, *pro tanto,*
of the money he appropriated to the payment of the
Ransch-Blake et al. judgment in excess of the amount
which constituted his share of the obligation. He, how-
ever, was not legally required to speak upon the subject,

78 Cal. App.—46

since obviously the proposition of Cohn to purchase the Blake-Arp judgment involved a matter or a proposed transaction solely between Mrs. Blake and Cohn, and one with which Arp was in no way or measure connected. Arp was not, nor was he to be, a party to that transaction. He was as much a stranger to it as any person in no manner or form connected with any of the litigation eventuating in the action by Blake against Arp and in which the former obtained the judgment against the latter which Cohn proposed to purchase. Arp, therefore, owed no legal duty to Cohn with respect to the matter of the latter's proposition to purchase the Blake-Arp judgment. [2] He was under no legal obligation to advise Cohn regarding his proposition to buy said judgment or to suggest to him (Cohn) that there were certain claims and liens existing against or upon said judgment. [3] In *Newhall* v. *Hatch,* 134 Cal. 269 [55 L. R. A. 673, 66 Pac. 266], the obvious proposition is stated that "mere silence on the part of a party will not create an estoppel unless he was under some obligation to speak, and a party invoking such estoppel must show that it was the duty of the other to speak, and that he has not only been induced to act by reason of such silence, but that the other had reasonable cause to believe that he would so act." The court in that case proceeded to say, as we have shown is true here, that there was nothing in the relations between the plaintiff and the defendant which made it the duty of the former to give the latter information regarding the matter as to which it was claimed the alleged estoppel arose.

But the foregoing considerations may be disregarded and still the finding that the plea of estoppel was not sustained cannot be disturbed, and this upon the proposition that Arp's testimony, as seen, is in sharp conflict with that of Cohn regarding the nature of their conversation, and is, as seen, to the effect that he (Arp) in said conversation told Cohn that he was entitled to an offset as against Mrs. Blake upon the judgment held by her against him and that he intended to seek the enforcement of said offset.

The argument advanced in the brief of counsel for appellant that, inasmuch as the court found that the conversation between Cohn and Arp occurred before the former's purchase of the Blake-Arp judgment, the further finding

that Arp's version of the conversation was true justifies the conclusion that the conversation referred to by Arp must have occurred subsequent to the purchase of said judgment by Cohn, is obviously destitute of merit. Both Cohn and Arp in their testimony were as one upon the fact that there was only one conversation had between them relative to the purchase of said judgment by Cohn. The latter testified that said conversation occurred before he purchased the judgment. Arp did not expressly fix the time that the conversation was had with reference to the time of the purchase of the judgment by Cohn, but did say that in said conversation Cohn told him that he *had bought* the judgment, from which the inference may be deduced that at the time of the conversation Cohn had already purchased the judgment. The court, as we have seen, found the other way. But it is clearly immaterial, upon the record here, whether the purchase was made prior or subsequent to the time the conversation occurred. If before, then the finding that Arp's version of the conversation—that is, that in said conversation he informed Cohn that he had certain offsets against his (Cohn's) assignor which he (Arp) intended to set up against the judgment—derives sufficient support from the testimony of Arp to that effect. If the conversation occurred at a time subsequent to the purchase of the judgment by Cohn, then obviously what was said or omitted to be said by Arp in the conversation could not have been a factor entering into the act of Cohn in purchasing the judgment.

Although we have herein given the points presented rather extended consideration, we are constrained to suggest that the case should have been left where the trial court left it.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.