SHEPARD, J.
 

 This is an appeal by plaintiffs from a judgment decreeing plaintiffs to be the owners of certain described land and against the defendant, respondent herein, for rental thereof during detention; decreeing further that defendant acquired a license to use a portion of said land; decreeing conditional revocation of said license; and decreeing a judgment in favor of defendant and against plaintiffs for $2,500 as partial reimbursement for expenses allegedly resultant to her from revocation of said license.
 

 From the record before us, it appears that about September 14, 1945, plaintiffs, appellants herein, became the owners as joint tenants of an undivided one-third interest in a certain parcel of land described in the evidence; that a brother, Walter W. Johnson and his wife, Melva, became the owners as joint tenants in an undivided one-third interest in the same parcel of land; that Jesse Johnson (the father of Clarence and Walter), with his wife, Johnnie G. Johnson (defendant and cross-complainant herein and stepmother of Clarence and Walter), became the owners as joint tenants of the other undivided one-third interest in the same parcel; that already located on said land at the time of the acquisition, there was a small house which was occupied by Jesse and Johnnie until the death of Jesse September 29, 1954, and Johnnie thereafter continued occupation and ownership thereof as the
 
 *328
 
 surviving joint tenant; that in 1946 plaintiffs also built a house nearby and prior to 1955 a domestic water pipe was laid from plaintiffs’ domestic water supply to the house of Jesse and Johnnie; that also prior to 1955 Jesse and Johnnie considerably improved the house in which they lived; that on February 18, 1955, all parties to the ownership then living ■voluntarily partitioned the property by exchange of deeds whereby each owner of a one-third interest became the sole owner of approximately one-third of the original property, thus dividing the original property into three separate parcels; that the parcel deeded to plaintiffs herein had located thereon the house which had been occupied and improved by Jesse and Johnnie; that Johnnie continued to occupy said house after the partition deeds were exchanged and further improved same; that the deed contained no reservation of interest in the house or in plaintiffs’ domestic water system; that plaintiffs never at any time laid claim to any interest in the house and there is no controversy with respect to Johnnie’s ownership thereof and the garage which she thereafter constructed near her house; that differences arose and March 1, 1957, and April 6, 1957, respectively, plaintiffs caused the usual 30-day and 3-day notices to quit to be served on Johnnie, and later brought this action to quiet title, to recover exclusive possession and for damages for detention.
 

 By answer and cross-complaint, Johnnie set up an alleged oral agreement for life tenancy rights for her in said house and the appurtenant ground and domestic water supply. She further alleged that by mutual mistake said oral agreement for a reservation of interest was not incorporated in the deed at the time of the voluntary partition and asked for reformation of the deed to Clarence to insert therein a reservation of the alleged life interest.
 

 After lengthy trial, the court on December 30, 1958, found,
 
 inter alia,
 
 on partially conflicting evidence, that defendant has no interest in the land nor in the domestic water well; that defendant removed the house from the land in question to her own land on August 24, 1958; that after the partition deeds were exchanged on February 18, 1955, and until March 1, 1957, defendant continued to occupy said house without any objection from plaintiffs; that by reason of plaintiffs’ conduct, defendant acquired a parol license to occupy the premises; that said parol license will be revoked only upon condition that plaintiffs repay to defendant the expense of the moving the residence from plaintiffs’ land and making
 
 *329
 
 said residence habitable, thereby assessing against plaintiffs one-half the cost of moving the house and garage, installing a new cesspool, a new foundation, electric meter, plumbing and a little over one-third of the cost of repairing and re-papering walls, carpentry, new water well, power line, T.V. antenna and shingles, the total estimated cost being $5,867.66, and $2,500 being the portion thereof required in the judgment to be paid by plaintiffs to defendant.
 

 Plaintiffs set forth in their briefs several grounds of appeal but because of our views with respect to the findings of fact., we find it necessary to discuss only one. Plaintiffs contend that the findings of fact do not support the conclusions of law nor the judgment. With this contention we agree.
 

 The findings are largely conclusions of law and not findings of fact. There is no finding that defendant was in any wise ignorant of the true state of the title nor of her legal rights thereunder, nor of the true boundaries of the partitioned parcels of land, nor the true location of the house with respect to its boundaries, nor of any of the physical facts regarding the property. Indeed, it is doubtful if any such finding could have found any possible support in the evidence. There is no finding that any oral agreement existed between plaintiffs and defendant for her continued retention of possession of the land occupied by her house and garage. There is no finding that plaintiffs did any affirmative act or made any statement to mislead defendant. There is no finding that any repairs to the house were more expensive by reason of its having been allowed to stay on plaintiffs’ parcel of land for two years longer than her original legal rights would have permitted as of February 18, 1955. Nor is there any finding that any of the expenses, a portion of which the court ordered to be borne by plaintiffs, would have been any less had the defendant moved on February 18, 1955. Furthermore, with the exception of the $75 expense for moving the garage, and possibly the $45 expense for repairing the house steps, we can find in the evidence little, if any, justification for such finding even had it been made. The court expressly found against the existence of any reservation of life or other interest in the land or domestic water system of plaintiffs. There is no finding that any of defendant’s improvements benefited plaintiffs in any way.
 

 Defendant contends that a license was created by the silence of plaintiffs during the time defendant continued to occupy the property. She cites in support thereof
 
 Stoner
 
 v.
 
 Zucker,
 
 
 *330
 
 148 Cal. 516, 520 [83 P. 808, 113 Am.St.Rep. 301, 7 Ann.Cas. 704], and
 
 Cooke
 
 v.
 
 Ramponi,
 
 38 Cal.2d 282, 286 [2] [239 P. 2d 638]. But these cases were both based on executed oral licenses. They are not helpful to defendant’s contention. Such a license can only be based on the theory of equitable estoppel and- in the connection in which it is here used, it could only be estoppel
 
 in pais.
 
 “. . . the doctrine of estoppel in pais must be applied strictly and should not be enforced unless substantiated in every particular.”
 
 (Bear Creek Co.
 
 v.
 
 James,
 
 115 Cal.App.2d 725, 732 [5] [252 P.2d 723].)
 

 “ ‘In general, four things are essential to the application of the doctrine of equitable estoppel: first, the party to be estopped must be apprised of the facts; second, he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; third, the other party must be ignorant of the true state of facts; and fourth, he must rely upon the conduct to his injury. ’ ”
 
 (Safway Steel Products, Inc.
 
 v.
 
 Lefever,
 
 117 Cal.App.2d 489, 491 [1] [256 P.2d 32].)
 

 Generally speaking, “ ‘mere silence on the part of a party will not create an estoppel unless he was- under some obligation to speak, and a party invoking such estoppel must show that it was the duty of the other to speak, and that he has not only been induced to act by reason of such silence, but that the other had reasonable cause to believe that he would so act.’ ”
 
 (Arp
 
 v.
 
 Blake,
 
 78 Cal.App. 713, 722 [3] [248 P. 750].)
 

 “In those eases where one party mistakenly has placed improvements upon the land of another it consistently has been held that the latter’s continued silence after obtaining knowledge of the former’s intended expenditures, in the absence of a showing of turpitude on the part of the landowner, was not sufficient to estop him from asserting his title.”
 
 (Marks
 
 v.
 
 Bunker,
 
 165 Cal.App.2d 695, 702 [13] [332 P 2d 340].)
 

 All or portions of these principles of estoppel have been discussed and rediseussed repeatedly from the very commencement of our judicial history with variation only in minor detail of expression and without substantial change. A few of these cases are
 
 Biddle Boggs
 
 v.
 
 Merced Mining Co.,
 
 14 Cal. 279, 293;
 
 Lux
 
 v.
 
 Haggin,
 
 69 Cal. 255, 266 [4 P. 919, 10 P. 674];
 
 Verdugo Canon Water Co.
 
 v.
 
 Verdugo,
 
 152 Cal. 655, 683-684 [93 P. 1021];
 
 City of San Diego
 
 v.
 
 Cuyamaca Water
 
 
 *331
 

 Co.,
 
 209 Cal. 105, 149 [287 P. 475] ;
 
 Lusitanian-American Development Co.
 
 v.
 
 Seaboard etc. Corp.,
 
 1 Cal.2d 121, 128 [5] [34 P.2d 139];
 
 People
 
 v.
 
 Ocean Shore Railroad,
 
 32 Cal.2d 406, 421 [19] [196 P.2d 570, 6 A.L.R.2d 1179],
 

 Chief among the principles necessary to sustain the person claiming estoppel is damage to that person through being misled by actions or omissions against whom estoppel is invoked. We do not have here such a case as was discussed in
 
 Green
 
 v.
 
 Brown,
 
 37 Cal.2d 391 [232 P.2d 487], wherein Green made an oral gift of the right to occupy the house in which both were residing, and in reliance thereon Brown made substantial expenditures in improving the house and ownership of a life estate in the house remained in Green.
 

 As far as the findings show, the licensee received only benefit. Intimations in the findings to the contrary are mere conclusions of law and under the facts shown in the evidence, even if there had been a finding, she was not put to any greater expense in moving the house than she would have been had she moved it February 18,1955. The same is true of her water well, new foundation, electric meter, power line, and, possibly, the other expenses involved in the judgment. The findings do not support the judgment.
 

 The judgment is reversed.
 

 Griffin, P. J., and Coughlin, J., concurred.