FRANK IUSI, Plaintiff and Respondent, v. CITY TITLE INSURANCE COMPANY et al., Defendants and Appellants.

Watson, Tedesco & Sanguinetti and Vincent N. Tedesco for Defendants and Appellants.

Johnson, Thorne, Speed & Bamford and Richard W. Herz for Plaintiff and Respondent.

AGEE, J.—Defendants City Title and Peninsula Title appeal from a judgment of $1,038.70 entered herein in favor of plaintiff and against defendants. The two defendants are treated herein as one entity and will be referred to as "the title company."

Plaintiff is a real estate broker. He acted as such for one Mancuso and his wife in the sale of two parcels of land owned by them. The nominal purchaser was one Frances King, acting as a "dummy" for one Israel Rafkind. One Fetzer, a real estate broker, acted for Rafkind.

On January 14, 1956, two standard form deposit receipt agreements were signed by the two brokers and (purportedly) by Frances King. One of the plaintiff's salesmen, Thompson, then presented the agreements to the Mancusos and they signed.

Each agreement recited that plaintiff had received $1,000 from the title company as a deposit on the purchase price of the parcel therein described. Each provided for additional amounts of $7,750 and $13,121.25, respectively, to be paid into the title company's escrows within 90 days after the date of the agreements.

The agreements further provided that, in the event these additional payments were not made within said 90 days, the

584

amount of the deposits should be forfeited to the Mancusos.

Their right to the entire $2,000 was qualified by the provision that, in such event, one-half thereof, or $1,000, was to be paid to plaintiff as his commission.

The Mancusos became unwilling to consummate the sales for reasons not pertinent here. On October 29, 1956, plaintiff commenced an action (no. 100699) against them for the full amount of a 5 per cent commission, to wit, $4,574.25. His theory was that he had produced a purchaser ready, able and willing to purchase on terms satisfactory to the Mancusos and that they had accepted such purchaser and such terms by signing the deposit receipt agreements. The Mancusos cross-complained against plaintiff for one-half of the $2,000 deposit on the theory that it had been forfeited by the purchaser.

Before this action was tried, Frances King had filed and lost an action (no. 101185) against the Mancusos for specific performance of the deposit agreements. The decision therein was based upon the ground that the purchaser had failed to make the additional downpayments within the time prescribed in the agreements.

In plaintiff's action against the Mancusos, Frances King testified that she had not signed the deposit agreements nor had she authorized anyone to sign them for her.[1] Accordingly, it was held that plaintiff had not produced a real purchaser for the Mancusos to accept and that he was therefore not entitled to a commission from them. However, it was also held that the additional downpayments were not made by the purchaser within the time prescribed and that the $2,000 was therefore forfeited.

The court found that plaintiff had not received the $2,000 as stated in the deposit agreements, but that he had falsely represented therein to the Mancusos that he had. At the time that the agreements were presented to the Mancusos they were completely executed, with the exception of the Mancusos' signatures. The court held that section 1962 subdivision 3 of the Code of Civil Procedure was applicable and that, as to the Mancusos, plaintiff was estopped to deny the recital in the agreements that he had received the $2,000.

Judgment was therefore rendered on the cross-complaint in

---

[1]The record does not disclose how Frances King could have gone to trial in her specific performance action (no. 101185), knowing that her signature had been forged. The record indicates that these forgeries were not revealed to the court in that action. Because she was merely acting as a "dummy," it may be that she knew very little about this action.

favor of the Mancusos and against plaintiff for one-half of the total deposit, or $1,000, plus costs of $38.70.

The instant action was thereafter commenced. It went to trial on plaintiff's second amended complaint, which contains two counts.

The first count is against the notary who acknowledged the forged signatures of Frances King on the two deposit agreements and her surety, the Glenn Falls Insurance Company. The theory of plaintiff against these defendants is that plaintiff relied upon the notary's certificates of acknowledgment and assumed that said signatures were genuine; that by reason of such reliance and assumption plaintiff ceased his efforts to obtain a purchaser for the property in question, although he then had the ability to do so; that as the result he was damaged in the amount of the 5 per cent commission which he otherwise would have received, to wit, $4,574.25.

The second count is against the title company and also seeks damages in the amount of $4,574.25. The plaintiff's theory here is that there was an agreement between the actual purchaser (Rafkind) and the title company to transfer moneys, which he had deposited with it in a so-called master account, into the two escrows set up to handle the two sales involved herein; that the title company was to make such transfer within the 90-day period provided for in the deposit receipt agreements; that the title company failed to do so and therefore the sales were never consummated; that as the result, plaintiff was deprived of a commission in the sum of $4,574.25. In short, the cause of action is for damages for the title company's breach of an agreement between it and the purchaser, as to which plaintiff contends he was a third party beneficiary to the extent of his commission.

Plaintiff obtained judgment under the first count against the notary and her insurance company for $4,574.25 and the insurance company satisfied the judgment in full.

On the second count, the trial court expressly held that the title company was not liable for such commission but nevertheless rendered judgment for $1,038.70, "the same being the amount due the Mancusos from the plaintiff herein." This obviously referred to the judgment obtained by the Mancusos on their cross-complaint in action No. 100699.

There is no mention of this judgment anywhere in plaintiff's second amended complaint, nor does the record show that any issue involving it was ever raised during the trial of the instant action. Plaintiff suggests that the lower court ap-

586

plied the "theory of subrogation." However, any recovery under such a theory is completely outside the issues raised by the pleadings and cannot furnish support for the judgment. (*Simmons* v. *Simmons*, 166 Cal. 438, 440-441 [137 P. 20]; *Hart* v. *Merchants' Trust Co.*, 120 Cal.App. 231, 234 [8 P.2d 162], 48 Cal.Jur.2d, Trial, § 302.)

In *Simmons, supra,* the action was upon an alleged agreement made by the parties which provided that, because of certain moneys furnished by the plaintiff to his wife for the erection of a house upon a lot owned by her prior to her marriage, the lot should become community property. The trial court found that no such agreement was made but it then went further and found that plaintiff had loaned the defendant the sum of $1,000 for which amount plaintiff was entitled to judgment. In reversing this judgment, the Supreme Court said: "The rule is well settled in this state that findings on issues not made by the pleadings must be disregarded, and cannot furnish support for a judgment. [Citing authorities.] It cannot be doubted that the issue whether money had been loaned by plaintiff to defendant was not among those raised by the pleadings. The complaint counted upon an agreement whereby plaintiff was to furnish money for the improvement of defendant's property and, in return therefor, was to become entitled to an interest in the property. The purpose of the action was, as declared in the opening statement, to obtain a decree establishing that interest. The answer denied the agreement. While it admitted that moneys had been furnished, it asserted that they had been transferred as gifts and not under the contract set up by plaintiff. The sole question raised by these pleadings was, then, whether the moneys furnished by plaintiff had been paid by him under the agreement on which he relied, or had been given by him to defendant. If the agreement had been established plaintiff would have been entitled to judgment declaring his interest in the property as claimed by him. The court finding that there had been no agreement, plaintiff was not entitled to relief. The defendant's averment that the moneys received by her were gifts were [*sic*] an incidental part of her denial that they had been furnished to her under the contract which plaintiff alleged. The finding that plaintiff had loaned defendant one thousand dollars was not responsive, either to any issue made by the pleadings or to the theory upon which the case was made and tried." (P. 441.)

 Plaintiff herein states that recovery was not only

granted on the theory of his being a third party beneficiary to an agreement between the title company and the purchaser but also on the "theory of subrogation."

Even assuming that plaintiff's pleadings could possibly encompass such a theory, any recovery thereunder would be prevented by his failure to either plead or prove that he had *paid* the Mancuso judgment and thereby had acquired a right, as a subrogee, to proceed against the title company on this theory.

■ *Arp* v. *Blake & Cohn,* 63 Cal.App. 362 [218 P. 773], is directly in point. One Ransch had obtained a judgment against Arp, Blake and one Hewitt for $1,050, plus interest and costs. This judgment became final on June 1, 1919. Under compulsion of a threatened levy, Arp paid the judgment in full on July 1, 1919. It then amounted to $1,330.30.

In another action, Blake had obtained a judgment against Arp for $2,100, which was entered on October 25, 1915, and became final, after appeal, on April 5, 1919. Blake assigned this judgment to Cohn on *June 3, 1919.*

After paying the Ransch judgment, Arp commenced an action, as the subrogee of Ransch, against Blake and Cohn. His theory as against Blake was that, in equity and good conscience, she was chargeable with the payment of the whole of the Ransch judgment. Judgment was rendered against Blake in accordance with this theory. Blake did not appeal.

Arp's theory as against Cohn was that Cohn took the assignment of the judgment against Arp subject to all defenses which the latter had against Blake; that he, Arp, therefore had a right to offset the amount which he had paid to satisfy the Ransch judgment against the amount due under the judgment assigned by Blake to Cohn.

The appellate court refused to apply the subrogation theory against Cohn. It recognized that "the assignee of a judgment acquires no better right than the assignor had at the time of the assignment" *but* it pointed out that, "[a]t the time of the assignment, to wit, June 3, 1919, the Blake judgment [in favor of Ransch] was final and *unsatisfied."* (Italics ours.) (P. 366.) It held that Arp had not acquired any right of subrogation *until* he had *paid* the Ransch judgment.

The opinion states, at page 367: "The doctrine of subrogation requires that the person seeking its benefit must have *paid* a debt due to a third person before he can be substituted to that person's rights and *it is not the liability to pay but*

*an actual payment* to the creditor which raises the equitable right. [Citing authorities.] The right of contribution or subrogation, therefore, did not accrue in favor of appellant [Arp] until his payment of the Ransch judgment on July 1st." (Italics ours.) This holding is in accord with the general rule. (46 Cal.Jur.2d, Subrogation, § 20, p. 109; 83 C.J.S. § 10, p. 607; 50 Am. Jur. § 28, p. 701.)

 Furthermore, the plaintiff, as subrogee, had no greater rights than his subrogor, the Mancusos, and would be subject to the same defenses as the title company would have against them. (*March* v. *Barnet*, 121 Cal. 419, 423 [53 P. 933, 66 Am.St.Rep. 44]; 46 Cal.Jur.2d p. 88.) This would include the defense of the statute of limitations. As stated in *Howell* v. *Dowling*, 52 Cal.App.2d 487, 498 [127 P.2d 630]: "[E]quity will enforce subrogation only when the action is brought within the time in which an action could have been brought to enforce the original obligation to which the right of subrogation is sought." (See also 46 Cal.Jur.2d 112.)

In the instant case, any cause of action by the Mancusos against the title company, arising out of its obligation to pay over the amount of the deposit to plaintiff, would have arisen during the period of January 14, 1956, and April 14, 1956, and the statute of limitations would have run on such cause of action by the time of the alleged subrogation.

 As stated above, plaintiff's cause of action is based upon an alleged breach by the title company of an agreement made by it on January 14, 1956, as to which plaintiff was a third party beneficiary. The breach, if any, occurred when the title company failed to transfer the necessary funds from the purchaser's master account into the two escrows within 90 days after January 14, 1956. Hence, the cause of action would accrue during the period from January 14, 1956, to April 14, 1956, and the statute of limitations would commence to run at the end of such period. (Code Civ. Proc., § 312; *Niles* v. *Louis H. Rapoport & Sons, Inc.*, 53 Cal.App.2d 644, 651 [128 P.2d 50]; 31 Cal.Jur.2d, Limitation of Actions, § 32, p. 460.)

If the alleged agreement was oral, the two-year statute would apply. (Code Civ. Proc., § 339, subd. 1.) If it was in writing, the four-year statute would apply. (Code Civ. Proc., § 337 subd. 1.) This action was filed on November 20, 1959, more than three years after the breach occurred and the cause of action accrued.

In what is apparently an attempt to avoid this defense,

plaintiff pleaded that the alleged agreement was "in part oral and in part in writing."

There is absolutely no evidence that the title company ever entered into any written agreement with the purchaser or with the Mancusos, nor was it a party to either of the two deposit receipt agreements.

Finally, plaintiff argues that the title company is estopped to plead the statute of limitations. This contention is without merit. An estoppel to plead the statute of limitations arises as a result of some conduct by the defendant, relied on by the plaintiff, which induces the belated filing of the action. There are roughly three classes of cases in which estoppel has been applied: (1) Where the plaintiff is aware of his cause of action and the identity of the wrongdoer, but the latter by affirmative acts induces the plaintiff to refrain from suit; (2) Where the plaintiff is unaware of his cause of action, and his ignorance is due to false representations by the defendant; (3) Where the plaintiff is unaware of the identity of the wrongdoer and this is due to fraudulent concealment by the defendant. (1 Witkin, California Procedure, Actions, § 170 et seq., p. 681.) The instant case is devoid of the misrepresentation and reliance elements requisite to an application of estoppel rules.

Judgment reversed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied March 29, 1963.