[Civ. No. 47844. First Dist., Div. One. Jan. 12, 1982.]

COMMERCIAL UNION ASSURANCE COMPANY, Plaintiff and Appellant, v.
CITY OF SAN JOSE, Defendant and Respondent.

COUNSEL

Norman Lariviere, Eric F. Hartman and Lariviere & Dickerson for Plaintiff and Appellant.

Robert J. Logan, City Attorney, and Mary Jo Levinger, Deputy City Attorney, for Defendant and Respondent.

OPINION

SIMS, J.*—Appellant insurer has appealed from a judgment of dismissal entered following its failure to amend its complaint for damages within the time allowed after the trial court had sustained the defendant city's demurrer with leave to amend. The demurrer had been sustained on the ground that more than six months had elapsed between the date of rejection of the claim for the damages alleged in the complaint and the commencement of the action. (See Gov. Code, § 945.6, subd. (a)(1).)

The salient facts as revealed by the allegations of the complaint are as follows: On February 5, 1978, the insurer's insured suffered property

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

damage from falling tree branches, allegedly caused by the negligence of the city. The damage was covered by an insurance policy then in force between the insurer and its insured. On April 14, 1978, the insured presented a claim for $30,000 damages to the city. (See Gov. Code, § 905.) On May 18, 1978, the city rejected the claim in its entirety and gave notice thereof to the claimant. (See Gov. Code, § 913.) On June 27, 1978, by reason of its obligations under the policy, the insurer paid its insured $550 for lost rents. No action was taken by either the insured or the insurer to prosecute the claim until January 4, 1979, when the insurer notified the city that it would be pursuing its subrogation rights against the city after paying repair costs estimated in the range of $15,000 to $20,000. On January 30, 1979, the city served a "Notice of Insufficiency and/or Non-Acceptance of Claim" on the insurer. On February 3, 1979, the insurer filed its complaint as subrogee to recover damages to be ascertained.

█ We point out below that generally the insurer's subrogated right is its right to be put in the position of its insured against third parties legally responsible to its insured for the loss which the insurer has both insured and paid. (See *Liberty Mut. Fire Ins. Co.* v. *Auto Spring Supply Co.* (1976) 59 Cal.App.3d 860, 864 [131 Cal.Rptr. 211].) The tortfeasor is usually permitted to assert all defenses available against the insured including the statute of limitations.

The insurer's claim of error rests on the assertion that it has no cause of action until it and its insured agree on the amount of the loss and such sum is paid to the insured. It asserts that its letter of January 4, 1979, was a timely claim for its own independent rights within the provisions of section 911.2 of the Government Code, and was inferentially recognized as such by defendant city in its notice of January 30, 1979; and that in any event, principles established in connection with the statutory rights of subrogation of uninsured motorist insurers establishes that plaintiff's action was not barred.

We find no merit in appellant's contentions. The general rule is applicable and the judgment must be affirmed.

I

With exceptions not pertinent here, section 945.6 of the Government Code provides: "(a) ... any suit brought against a public entity on a cause of action for which a claim is required to be presented ... must

be commenced: [¶] (1) If written notice [of rejection] is given in accordance with Section 913, not later than six months after the date such notice is personally delivered or deposited in the mail."

Under the foregoing provision the insured's right to commence an action against the city for damages to his premises expired on or about November 18, 1978. (*Tubbs* v. *Southern Cal. Rapid Transit Dist.* (1967) 67 Cal.2d 671, 675 [63 Cal.Rptr. 377, 433 P.2d 169]; *Smith* v. *City and County of San Francisco* (1977) 68 Cal.App.3d 227, 230-231 [137 Cal.Rptr. 146]; *Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 578-583 [121 Cal.Rptr. 842]; *Chas. L. Harney, Inc.* v. *State of California* (1963) 217 Cal.App.2d 77, 90-91 [15 Cal.Rptr. 870].)

The right of an insurer to be subrogated to the rights of its insured is generally distinguished from a claim for contribution or indemnity or statutory subrogation. (See Annot. Statute of Limitations—Subrogated Insurer (1979) 91 A.L.R.3d 844, 847; cf. generally with Annot. Contribution, Indemnity Claims—Timeliness (1974) 57 A.L.R.3d 866. Note: *Liberty Mut. Ins. Co.* v. *Fales* (1973) 8 Cal.3d 712, 716-717 [106 Cal.Rptr. 21, 505 P.2d 213]; *Phoenix of Hartford Ins. Companies* v. *Colony Kitchens* (1976) 57 Cal.App.3d 140, 144 [128 Cal.Rptr. 893]; *Interinsurance Exchange* v. *Harmon* (1968) 266 Cal.App.2d 758, 762 [72 Cal.Rptr. 352]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, §§ 122-124, pp. 5341-5343.) In the former cases the rule is that equity will enforce subrogation only when the action is brought within the time in which an action could have been brought to enforce the original obligation to which the right of subrogation is sought. (*Phoenix Ins. Co.* v. *Pacific Lumber Co.* (1905) 1 Cal.App. 156, 159 [81 P.976]; note: *Automobile Ins. Co.* v. *Union Oil Co.* (1948) 85 Cal.App.2d 302, 304-305 [193 P.2d 48]; and Annot., *supra*, 91 A.L.R.3d 844, 850-854.)[1] This is also the general rule for common law subrogation as distinguished from indemnity or contribution. (See *Iusi* v. *City Title Ins. Co.* (1963) 213 Cal.App.2d 582, 588 [28 Cal.Rptr. 893] and *Howell* v. *Dowling* (1942) 52 Cal.App.2d 487, 498-499 [126 P.2d 630].) The same limitation is applied to an employer's statutory right to subrogation against a tortfeasor for workers' compensation benefits paid to an employee for injuries caused by the tortfeasor's negligence. (*County of*

---

[1]In the *Union Oil Co.* case it is suggested that although the former case applied the correct rule, it applied an erroneous statute of limitations. (85 Cal.App.2d at pp. 307-309.)

*San Diego* v. *Sanfax Corp.* (1977) 19 Cal.3d 862, 871-872 [140 Cal. Rptr. 638, 568 P.2d 363]; and *Aetna Cas. etc. Co.* v. *Pacific Gas & Elec. Co.* (1953) 41 Cal.2d 785, 787-788 [264 P.2d 5, 41 A.L.R.2d 1037]; note *Pacific Tel. & Tel. Co.* v. *County of Riverside* (1980) 106 Cal.App.3d 183, 193-194 [165 Cal.Rptr. 29].)

■ We conclude that in the absence of special considerations, the insurer's right to recover on the insured's cause of action against the alleged tortfeasor for the damages to the insured's property was barred when the statutory period ran on the insured's claim.

## II

The insurer points out that its notice to the city dated January 4, 1979, was filed within the one-year period for filing claims for damages to real property (Gov. Code, § 911.2; *Wheeler* v. *County of San Bernardino* (1978) 76 Cal.App.3d 841, 846 [143 Cal.Rptr. 295]); and that its action was filed within six months after the city, by notice dated January 30, 1979, advised it of the insufficiency or nonacceptance of the claim. (Gov. Code, § 945.6, subd. (a)(1).) It asserts that its right as subrogee is a new claim, and that in order to avoid subverting provisions of law designed to give the governmental entity notice and an opportunity to investigate and settle meritorious claims without litigation, it gave notice of its potential subrogation rights before a cause of action had accrued. (See *Allstate Ins. Co.* v. *County of Alameda* (1973) 33 Cal.App.3d 418, 423 [109 Cal.Rptr. 53].)

In the case last cited the court reversed a summary judgment that had been rendered in favor of a governmental agency against the subrogated insurer of an uninsured motorist on the ground that the insurer's claim had not been filed within the 100-day period required by Government Code section 911.2. That court did state: "[T]he fact remains that the insurer does not have a cause of action, and therefore has no basis for a claim, until it makes payment to its insured upon the latter's claim. . . ." (33 Cal.App.3d at p. 422.) Examination of the entire opinion and of the opinion in the case upon which it rests, reflects that the decision is limited to the construction of the provisions of subdivision (g) (formerly subd. (f)) of section 11580.2 of the Insurance Code that expressly create the insurer's right to be subrogated to the rights of its insured when it *pays* a claim under an uninsured motorist endorsement,

and that expressly designate the period in which that right may be enforced.[2]

In *Allstate Ins. Co.* v. *County of Alameda, supra,* 33 Cal.App.3d 418, the court noted that the statute creates "an exception to the well-established doctrine that the subrogee has no greater right than the subrogor." (*Id.,* at p. 421.) In *Liberty Mut. Ins. Co.* v. *Fales, supra,* 8 Cal.3d 712, the court noted: "Under settled principles, an insurer in its role as subrogee has no greater rights than those possessed by its insured, and its claims are subject to the same defenses. (*Iusi* v. *City Title Ins. Co.* (1963) 213 Cal.App.2d 582, 588 . . . .)" (*Id.,* at p. 717.) The cause of action granted the insurer of the uninsured motorist under the Insurance Code is statutory and not derivative. (See *Phoenix of Hartford Ins. Companies* v. *Colony Kitchens, supra,* 57 Cal.App.3d 140, 145-147; *Interinsurance Exchange* v. *Harmon, supra,* 266 Cal. App.2d 758, 761.)

We conclude that the insurer's reliance on *Allstate,* supra, is misplaced.

### III

The insurer, recognizing that *Allstate Ins. Co.* v. *County of Alameda, supra,* 33 Cal.App.3d 418, deals with a statutory period of limitations, also urges that we should follow the reasoning of that case insofar as it rests on the principle that the subrogee may lose its rights if the limitation period prescribed for action by the insured passes before the insurer can perfect its cause of action. (*Id.,* at p. 422; and *Liberty Mut. Ins. Co.* v. *Fales, supra,* 8 Cal.3d at p. 716.) As noted above, that conclusion is predicated upon the statutory language which, as recognized in *Fales, supra,* "clearly specifies that the insurer's rights against the uninsured motorist arise only upon payment of the claim of the insured." (*Id.,* at p. 717, fn. 7.)

We note that there is also some support for the insurer's views in *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26

---

[2]Subdivision (g) of section 11580.2 of the Insurance Code since 1963 has provided: "The insurer paying a claim under an uninsured motorist endorsement or coverage shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made. Such action may be brought within three years from the date that payment was made hereunder."

Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673], a case decided after the briefs were filed in this action. There the court applied the established rule, that a cause of action for equitable indemnity among tortfeasors does not arise until the indemnitee has suffered actual loss through payment, to the "partial" or "comparative" equitable indemnity established in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. It held that the indemnitee's claim against a public entity could be filed within the statutory period after such payment. (26 Cal.3d at pp. 755-766.) In reaching that conclusion the court cited *Allstate Ins. Co.* v. *County of Alameda, supra,* with approval. (26 Cal.3d at pp. 754-755.) Here again, however, the court was dealing with what the courts had declared to be a separate, and not a derivative cause of action.[3]

The insurer seeks further comfort in the fact that there are statements which indicate that the general equitable right to subrogation arises on actual payment to the creditor. In *Iusi* v. *City Title Ins. Co., supra,* 213 Cal.App.2d 582, which is cited in support of the rule that the subrogee takes the claim of the subrogor subject to all defenses, including the statute of limitations, that may be asserted by the debtor, the court found *Arp* v. *Blake* (1923) 63 Cal.App. 362 [218 P. 773] to be directly in point. (213 Cal.App.2d at p. 587.) In *Arp, supra,* the court found that the judgment debtor, who sought to be subrogated to the rights of the assignor of the judgment against himself, could not claim such a right because he had not paid the assigning judgment creditor's obligation before the assignment to the assignee who sought to collect the judgment. The court stated: "The right of subrogation can arise only in favor of one who has, under some duty or compulsion, paid the debt of another. It arises where one having a liability in the premises pays the debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid. The doctrine of subrogation requires that the person seeking its benefit must have paid a debt due to a third person before he can be substituted to that person's rights and it is not the liability to pay but an actual payment to the creditor which raises the equitable right. [Citations.]" (*Id.,* at p. 367.)

---

[3]Government Code section 901 dealing with the date of the accrual of a cause of action against a public entity was amended by chapter 856 Statutes of 1981 by the addition of the following sentence: "However, the date upon which a cause of action for equitable indemnity or partial equitable indemnity accrues shall be the date upon which a defendant is served with the complaint giving rise to the defendant's claim for equitable indemnity or partial equitable indemnity against the public entity."

The equitable right to which the court refers is the right of the subrogee to enforce "the security or obligation held by the creditor whom he has paid." In *Arp* v. *Blake, supra*, 63 Cal.App. 362, that right had been assigned before the payment was made and the payor secured no rights as subrogee. Here, the insured's cause of action was barred before the insurer made payment, and it secured no rights.

The postulate that the cause of action accrues on payment does not necessarily lead to the conclusion that there will be an inequitable situation for the insurer. In *Travelers Indemnity Co.* v. *Bell* (1963) 213 Cal. App.2d 541 [29 Cal.Rptr. 67], decided with reference to uninsured motorist coverage issued before the last sentence was added to the provisions now found in section 11582, subdivision (g) (see fn. 2, *ante*), it was urged that the subrogee insurer should be relieved of liability if the insured failed to file an action against the uninsured motorist within the statutory period. The court pointed out that the insurer was notified within a month after the accident that its insured claimed damages for personal injuries against the uninsured motorist, she was represented by counsel who began negotiations with the insurer, and her demand for arbitration had put the insurer on notice that an award would be made against it for which it would have subrogation rights against the uninsured motorist under the provisions of the contract. (We presume the contract followed the statutory language found in Stats. 1959, ch. 817, § 1, p. 2835, adding § 11580.2 to the Ins. Code, particularly subd. (e), p. 2837.) The court concluded, "During this time it could have taken whatever steps were necessary to protect the bodily injury claim." (*Id.,* at p. 549; see also *Kidd* v. *Hillman* (1936) 14 Cal.App.2d 507, 510 [58 P.2d 62]; *Mitchell* v. *Holmes* (1935) 9 Cal.App.2d 461, 463 [50 P.2d 473].)

In *Liberty Mut. Ins. Co.* v. *Fales, supra*, 8 Cal.3d 712, the foregoing suggestion was lightly dismissed in view of the fact that the statute, as amended, clearly provided that the rights would arise only upon payment. (*Id.,* at p. 717, fn. 7.)

On the other hand, in *County of San Diego* v. *Sanfax Corp., supra*, 19 Cal.3d 862, where the court determined that the one-year statute of limitations governed the employer's statutory action under section 3852 of the Labor Code, it had no difficulty in declaring that the one-year statute did not run from the date the employer agreed to pay, or was

ordered to pay benefits, but rather from the date of injury. (*Id.*, at pp. 879-886.) The court found that under the statutory scheme the employer could take action on its own behalf.

Here the facts pleaded show that as early as June 27, 1978, the insurer knew of its insured's loss and made a partial payment under the policy. There is nothing inequitable in requiring that upon proof of loss (see Ins. Code, §§ 2070 and 2071—Standard Form of Fire Insurance Policy) the insurer inquire concerning the existence and nature of any claims the insured may have against third persons responsible for the loss. The standard form only provides for requiring an assignment of such right of recovery to the extent payment is made. Nevertheless, "there is [also] an implied covenant of good faith and fair dealing that neither party will do anything which impairs the right of the other to receive the benefits of the agreement." (*Liberty Mut. Ins. Co.* v. *Altfillisch Constr. Co.* (1977) 70 Cal.App.3d 789, 797 [139 Cal.Rptr. 91].) The right of recovery against the tortfeasor is assignable. (Civ. Code, § 954; *Wikstrom* v. *Yolo Fliers Club* (1929) 206 Cal. 461, 463-464 [274 P. 959]; *Dibble* v. *San Joaquin L. & P. Corp.* (1920) 47 Cal.App. 112, 117 [190 P. 198].) We therefore conclude that at any time prior to November 18, 1978, the insurer could have arranged with the insured to file suit on the latter's rejected claim either in cooperation with the insured (see *Travelers Indem. Co.* v. *Ingebretsen* (1974) 38 Cal.App.3d 858, 865-866 [113 Cal.Rptr. 679]; and *Mode O'Day Corp.* v. *Ringsby Truck Lines* (1950) 100 Cal.App.2d 748, 751 [224 P.2d 368]), or by taking an assignment in return for acknowledging liability for such damages as might be ascertained.

We recognize that in some situations it may take a longer period of time to ascertain either the extent to which the insurance covers the loss, or the actual amount of damages, such as in the case of reconstruction of a portion of a building. We see no reason, however, why if the insured refused to cooperate to keep his claim alive, the insurer could not file a timely action against the tortfeasor joining the recalcitrant insured as defendant by reason of the insurer's inchoate subrogation right and the insured's duty of fair dealing. In fact, that is what the insurer belatedly attempted to do here before payment of the loss.

We find no inequity in holding the insurer barred by the limitation applicable to its insured. In fact, in so doing, we recognize that in many cases it may speed payment of the insured's loss.

## IV

■ Finally, we consider the insurer's contention that the city, by reason of the nature of its response to the insurer's letter of January 4, acknowledged that it was denying a separate claim and is estopped to raise the defense of the limiting statute to an action filed within six months after that response.

A copy of the insurer's letter was attached to the complaint. The body of the letter is set forth in the margin.[4]

The city's reply, dated January 30, 1979, is referred to in the complaint as a "Notice of Insufficiency and/or Non-Acceptance of Claim." A copy of that notice was attached to the memorandum of points and authorities in opposition to the demurrer filed by the insurer in the trial court. We take judicial notice of the official act of the city. (*Chas. L. Harney, Inc.* v. *State of California, supra,* 217 Cal.App.2d 77, 85-87.)[5] The notice is on a printed form bearing the title quoted in the pleadings. It states in pertinent part: "PLEASE TAKE NOTICE THAT: [¶] The claim you presented to the City of San Jose fails to comply substantially with the requirements of California Government Code Sections 910 and 910.2, or is otherwise insufficient for the reasons checked below, or will not be accepted for filing for the reasons checked below.... [¶] x 2. The claim was not presented within the time limits prescribed by Government Code Section 911.2."

---

[4]"This letter is to advise you that Commercial Union Insurance Company will be pursuing its subrogation rights against the City of San Jose arising out of an incident of which you already have notice. I enclose for your reference a claim in the name of Josephine Johnson against the City regarding property damage caused by trees owned and maintained by the City of San Jose occurring on February 5, 1978. Mrs. Johnson's claim was denied by the City Attorney, Robert J. Logan, on May 18, 1978. Mrs. Johnson did not pursue the action against the City. [¶] Pursuant to a policy of insurance covering the property in question, Commercial Union Insurance Company has expended to date the amount of $550. It is anticipated at this time that total repair costs for which Commercial Union will be required to pay will be in the range of $15,000 to $20,000. When my principal has concluded its adjustment of the loss with Mrs. Johnson, suit will be filed against the City of San Jose. [¶] Please consider this a claim against the City of San Jose for all past and prospective damages, should a second claim be required."

[5]The foregoing doctrine does not reach the insurer's reference to the fact that $15,661.48 was paid in satisfaction of the claim on March 5, 1979, and a subrogation receipt was executed for the insurer by the insured, nor to copies of the papers evidencing that transaction.

Since the one-year period had not expired, the insurer claims it was entitled to believe that the city had recognized the claim and had erroneously applied the 100-day provision of Government Code section 911.2.

In *Wheeler* v. *County of San Bernardino, supra*, 76 Cal.App.3d 841, the claimant erroneously believed that the 100-day, rather than the one-year provision applied, and within the year, but after the 100-day period had expired, filed a petition to file a late claim (see Gov. Code, § 911.4). That petition was denied. Thereafter the claimant's court petition for an order allowing filing a late claim was denied because the one-year period had not expired. The claimant filed the action to recover damages more than six months after the rejection of its petition by the county, but within two years of the alleged injury. The court reversed a judgment entered after the county's demurrer had been sustained without leave to the claimant to amend. The court stated: "Throughout this litigation, the county has taken the position that no claim was ever presented. Under the mistaken belief that the 100-day claim presentation period applied, which mistaken belief the county fostered and encouraged, plaintiff filed a petition in superior court for relief from the claim presentation requirement (Gov. Code, § 946.6) on September 14, 1976, well within the 6-month period. If the county had acknowledged the claim as having been timely presented and sent a notice expressly rejecting the claim, we have no reason to doubt that suit would have been filed within six months. Thus, even if the county's notice be construed as a notice of rejection of claim, which we do not believe it can be, the county would be estopped from relying on it. [Citation.]" (*Id.*, at p. 848.)

Here there could be no reliance on any erroneous communication from the city. The insured's action was already barred. As we have seen, the insurer had no independent action and had to rely on the rights it would receive from its insured. It so stated in its letter. The insurer was in no way affected by the error inherent in the city's grounds for rejecting its claim. The city on January 30, 1979, could not have induced the insurer to delay filing a complaint which should have been filed on or before November 18 of the previous year. The city could not have then induced the insurer to fulfill its preexisting legal obligation to its insured.

At all times after it received the notice of loss which led to the payment June 27, 1978, the insurer was charged with notice of the

potential liability of the city, and under a duty to investigate and prosecute or cause its insured to prosecute the claim which was rejected May 18, 1978. The city was not estopped to raise the six-month limitation of Government Code section 945.6. (See *Tubbs* v. *Southern Cal. Rapid Transit Dist., supra,* 67 Cal.2d 671, 679; *El Dorado Irrigation Dist.* v. *Superior Court* (1979) 98 Cal.App.3d 57, 60-61 [159 Cal.Rptr. 267].)

In this case it is true that the public entity received from the insured timely notice of the potential claim and an opportunity to investigate the merits of that claim while the evidence was fresh and witnesses were available. It also could correct any conditions giving rise to further liability, and, if so minded, could have attempted to make an amicable settlement. (See *Stanley* v. *City and County of San Francisco, supra,* 48 Cal.App.3d 575, 581.) It was also, however, authorized to await the statutory period after rejection, and, in the absence of suit, plan its fiscal affairs accordingly. On the other hand, if ordinary claims could be reopened by insurers at such time as they, in the exercise of their discretion, chose to make a settlement with an insured who suffered damages for which a governmental entity allegedly was responsible, the certainty which the claim limitation statutes were designed to provide would vanish. The diligent insurer should have no difficulty protecting its rights under the claims statutes. Compliance with those statutes will speed settlement of the insured's claim and so be in the interests of insureds as well as public entities.

The judgment is affirmed.

Racanelli, P. J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 10, 1982.