**FIRST INTERSTATE BANK OF HAWAII, a Hawaii banking corporation, Plaintiff,**

v.

**Michael J. HARTLEY, Nicholas C. Lindahl, Lindahl & Lindahl, a Hawaii general partnership, Joe Anthony, Lynn Hersh, Personal Representative of the Estate of William Jack Gumpert, also known as Jack Irwin Hersh, Martin F. Goldman, Martin F. Goldman, A California professional corporation, Gerald Harman, Nicholas Nickolas, Carl E. Press, Charles G. Rolles, Daniel L. Skondin, Alfred B. Souza, Jr., Gene Sontag, N & C Incorporated, a Hawaii corporation, John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10 and Doe Entities 1–10, Defendants.**

Civ. No. 87–0243.

United States District Court, D. Hawaii.

Feb. 18, 1988.

Clinton R. Ashford, Cuyler Shaw, Eric K.H. Chinn, Ashford & Wriston, Honolulu, Hawaii, for plaintiff.

Edward C. Kemper, Kemper & Watts, Honolulu, Hawaii, for defendant Lynn Hersh, Personal Representative of the Estate of William Jack Gumpert, also known as Jack Irwin Hersh.

## ORDER GRANTING DEFENDANT LYNN HERSH'S MOTION FOR SUMMARY JUDGMENT

SAMUEL P. KING, Senior District Judge.

This matter comes before the Court on the motion of Lynn Hersh, personal representative of the estate of William Jack Gumpert, also known as Jack Irwin Hersh, for summary judgment. Having carefully considered the memoranda and oral argument submitted by the parties, this Court finds as follows:

### I. BACKGROUND

This case arises from the collapse of Air Hawaii, an air carrier that provided passenger and cargo service between Hawaii and California. Air Hawaii was operated by Airwest International ("Airwest"), a Nevada corporation wholly owned by N & C Incorporated ("N & C"), a Hawaii corpora-

tion. Defendant Lynn Hersh, the moving party herein, is the personal representative of the estate of William Jack Gumpert, a director and shareholder of N & C and a director of Airwest.

According to the complaint, Gumpert participated in organizing Air Hawaii. He and other defendants allegedly promoted themselves as the initial investors in Air Hawaii and represented the airline as having substantial financial backing. In fact, plaintiff alleges that the defendants had invested only nominal amounts and planned to raise the bulk of the capital for the airline from the sale of airline ticket coupon books entitling the purchaser to four round-trips between Honolulu and San Francisco or Los Angeles and twenty "bonus" one-way flights between the same points. If the company succeeded, defendants would profit; if it failed, the loss would fall primarily upon the coupon book purchasers.

On August 30, 1985, Air Hawaii was authorized by the Department of Transportation to operate and to sell ticket coupon books. On September 24, 1985, Airwest contracted with the plaintiff, First Interstate Bank of Hawaii ("FIHI" or "the Bank") to participate in FIHI's charge card program. Under the terms of the contract, Airwest could sell Air Hawaii passenger tickets, including ticket coupon books, to customers using VISA or MasterCard charge cards. Pursuant to contractual agreements between FIHI and the charge companies, FIHI was required to honor "chargebacks"—in essence, to buy back tickets and coupon books—from purchasers who had charged Air Hawaii tickets or coupons but were unable to use them or to obtain refunds.

After entering the agreement with FIHI, Air Hawaii sold a large number of ticket coupon books to local and mainland buyers. Between October 9, 1985 and November 22, 1985, Hawaii purchasers bought approximately 2,700 ticket coupon books at $1,400 per book. Between October 17, 1985 and February 19, 1986, mainland customers bought approximately 9,100 ticket coupon books at $1,200 each.

By March of 1986, Air Hawaii ceased flight operations, and on March 14 the company filed for bankruptcy under Chapter 11. FIHI now claims to have spent more than $4.5 million honoring chargebacks from ticket purchasers as a result of Air Hawaii's failure.

William J. Gumpert was murdered on March 19, 1986. Defendant Lynn Hersh became the personal representative of the estate of William J. Gumpert. Hersh caused to be published in the Honolulu Advertiser a notice informing creditors to present their claims against the estate. No claims were filed by FIHI against the estate until March 31, 1987, on which date FIHI filed the instant lawsuit. The issue presented by the instant motion is whether plaintiff's claims against the estate are time barred by the nonclaim statute of the Hawaii Probate Code. That question in turn hinges upon when plaintiff's cause of action against Gumpert arose.

## II. DISCUSSION

### A. *Standard For Summary Judgment*

Summary judgment is proper where, viewing the evidence and inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law. *Jones v. Halekulani Hotel, Inc.,* 557 F.2d 1308, 1310 (9th Cir.1977). The moving party must demonstrate entitlement to summary judgment, and if an inference can be deduced from facts under which the nonmoving party might recover, summary judgment is inappropriate. *Clipper Exxpress v. Rocky Mountain Motor Tariff,* 690 F.2d 1240, 1250 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983).

### B. *Statutory Framework*

Hersh's argument rests on Haw.Rev. Stat. § 560:3–803, which provides time requirements for filing claims against decedents' estates:

(a) *All claims against a decedent's estate which arose before the death of the decedent ... whether due or to become*

due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, if not barred earlier by other statute of limitations, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

(1) *Within four months after the date of the first publication of notice to creditors* if notice is given in compliance with § 560:3–801; provided claims barred by the nonclaim statute at the decedent's domicile before the first publication for claims in this State are also barred in this State.

. . . .

(b) *All claims against a decedent's estate which arise at or after the death of the decedent* ... whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented as follows:

. . . .

(2) *Any other claim, within four months after it arises.*

Haw.Rev.Stat. § 560:3–803 (1985) (*emphasis added*).

Notice to creditors was published in the Honolulu Advertiser on June 11, June 18, and June 25, 1986, directing creditors to present their claims to the estate within four months or be barred. If the notice was adequate, under Haw.Rev.Stat. § 560:3–803(a)(1) any claims which arose prior to Gumpert's death and which were not presented by October 11 are barred. Additionally, any claims which arose after his death are barred by 560:3–803(b) unless they were presented within four months after the claims arose.

C. *Claims Arising After Gumpert's Death*

■  Plaintiff's claims in this action are in the nature of fraud. Claims for fraud,

whether based on state or federal law, arise when the fraud is or should have been discovered. *See, e.g., Compton v. Ide,* 732 F.2d 1429 (9th Cir.1984) (RICO action accrues when plaintiff knows or has reason to know of the injury which is the basis of his action); *Bush v. Rewald,* 619 F.Supp. 585 (D.Haw.1985) (action under § 12(2) of the Securities Act of 1933 arose when plaintiff should have discovered fraud.)

According to the First Amended Complaint, FIHI began investigating the affairs of Air Hawaii in April of 1986 and discovered certain but not all of the fraudulent activity in May of 1986. Additional discoveries came to light in June, July and August of 1986. Therefore, by plaintiff's own admission, the Bank was aware of the fraud significantly more than four months before March 31, 1987, the date the complaint in this action was filed.

FIHI contends, however, that its claims arose not when the Bank knew or should have known of the fraud practiced upon it, but when the individual coupon book purchasers to whose claims it is subrogated applied for and were granted chargebacks by the Bank. This argument is based on the well settled rule that, for limitations purposes, the subrogee stands in the shoes of the subrogor; hence, the subrogee's action accrues at the time the limitation period starts running as to the subrogor. *See, e.g., Taisho Mar. & Fire Ins. v. M/V Sea-Land Endurance,* 815 F.2d 1270, 1274 (9th Cir.1987); *Commercial Union Assurance Co. v. City of San Jose,* 127 Cal.App.3d 730, 179 Cal.Rptr. 814 (1982). FIHI contends that the individual purchasers had knowledge of the fraud only from the date upon which each individual received a chargeback, at which time the Bank's superior knowledge would be attributable to the purchaser, and therefore that the claims accrued only at that point. Under this theory, claims arising from chargebacks granted on or after December 1, 1986 would not be barred by the nonclaim statute.[1]

---

**1.** FIHI submits the affidavit of David Nascimento, Manager of Bank Card Services for FIHI, attesting that the Bank granted $388,416.00 in chargebacks on or after December 1, 1986.

■ This motion appears to raise an issue of first impression in Hawaii: whether the subrogee's fraud action accrues at the time the limitation period starts running as to the subrogor where the subrogee, herein the Bank, has prior knowledge of the fraud. The general rule holding the subrogee to the subrogor's limitations period makes good sense in the more typical situation in which the subrogor is aware of the facts underlying the cause of action before the subrogee: the subrogee would possess broader rights than the subrogor if not held to the same limitations period. The general rule that both subrogor's and subrogee's actions accrue at the same time assures that the subrogee can be subrogated to no greater rights than the one whose place he takes in the litigation.

Here the situation is reversed. FIHI, the subrogee, admits that it knew of the fraud by August 1986. FIHI also knew that its agreements with Visa and Mastercard would require it to honor chargebacks from coupon book purchasers. The limitations period provided by the Probate Code explicitly applies to any claims "whether due or to become due, absolute or contingent, liquidated or unliquidated ...". Haw.Rev.Stat. § 560:3–803. Under these circumstances, FIHI may not rely on the presumed [2] ignorance of the individual coupon book purchasers to excuse its failure to comply with the strict time limitations of the Probate Code. Because FIHI knew or should have known of the fraud and its potential liability to coupon book purchasers in August 1986, it had at least a contingent claim, or contingent claims, by that time. No such claims were filed within four months after August 1986.

Accordingly, plaintiff's claims against the estate which arose after Gumpert's death are time barred by Haw.Rev.Stat. § 560:3–803(b).

### D. *Claims Arising Prior to Gumpert's Death*

FIHI next argues that its claims against the estate are not barred to the extent that they arose prior to Gumpert's death on March 19, 1986, because the notice published by Hersh is defective. The existence of such claims is at best doubtful, since FIHI's First Amended Complaint alleges that "[d]iscovery of Defendants' fraudulent activities ... was neither made nor could have been made through the exercise of due diligence at any time prior to March 31, 1986." However, assuming there to be prior claims and proper notice, the claims are time barred by H.R.S. § 560:3–803(a)(1) because they were not filed within four months of June 11, 1986, the first date of publication. If the notice was defective, those claims would remain live up to three years after the date of death. Haw.Rev. Stat. § 560:3–803(a)(2).

■ FIHI argues that the notice is defective for failing to state that claims could be timely presented within the four month deadline either (i) by filing a statement of claim directly with the probate court, or (ii) by commencing an action in any other competent court within the limitation period. Additionally, FIHI complains that the notice failed to apprise creditors that the nonclaim statute's bar date would apply to contingent, unliquidated, and unmatured claims.

Haw.Rev.Stat. § 560:3–801(a) directs that the notice must notify creditors of the estate "to present their claims as provided in § 560:3–804 within four months after the date of the first publication of the notice or be forever barred." § 560:3–804 details the manner of presentation of claims. While the Code itself is ambiguous as to the degree of detail the notice must contain regarding how to present claims, the notice Hersh published in the Honolulu Advertiser contains the exact language concerning creditors' claims that appears in the form prepared by the Hawaii Continuing Legal Education Association and contained in the Hawaii Probate Manual, published in 1979. This Court finds that the language of the

---

**2.** What each coupon holder knew or should have known is not supported by any affidavit of the coupon holders or anyone associated with the plaintiff. Thus, plaintiff falls short of the requirements of Fed.R.Civ.P. 56(e). In light of this Court's holding as to when the action accrued, however, plaintiff's failure to adequately set forth facts is not itself determinative.

notice is adequate under the statute. Since notice was properly given and plaintiff failed to present its claims by October 11, 1986, any claims which arose before Gumpert's death are barred.

### E. *Continuance Under Fed.R.Civ.P. 56(f)*

FIHI lastly requests a continuance as permitted by Fed.R.Civ.P. 56(f) to allow the Bank to conduct further discovery. Under Haw.Rev.Stat. § 560:3–803(c)(2), the nonclaim statute does not bar an action against the personal representative of a decedent's estate to the extent that the representative is protected by liability insurance, if the action is filed within two years of the occurrence of the event insured against. The bank has not yet determined whether Hersh as personal representative is protected by liability insurance. Rather than preclude recovery against the estate at this stage of the litigation, FIHI will be given the opportunity to find factual support for this avenue of relief against Gumpert's estate.

Accordingly, IT IS HEREBY ORDERED that summary judgment is GRANTED as to defendant Lynn Hersh as personal representative of the estate of William J. Gumpert; provided, however, that plaintiff may pursue relief against Hersh to the extent, if any, that Hersh is protected by liability insurance applicable to the acts complained of.

IT IS FURTHER ORDERED that discovery pertaining to insurance shall be pursued expeditiously and that Hersh may renew this motion, as to this basis for recovery, three months from the date hereof if discovery does not reveal pertinent insurance coverage.